[Cite as *Toledo v. Jackson Industries Corp.*, 2018-Ohio-2592.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| City of Toledo | Court of Appeals Nos. L-17-1135 |
| | L-17-1136 |
| Appellee | L-17-1137 |
| | |
| v. | Trial Court Nos. CRB-15-19156 |
| | CRB-15-19155 |
| Jackson Industries Corp. | CRB-15-19154 |
| | |
| Appellant | **DECISION AND JUDGMENT** |
| | |
| | Decided: June 29, 2018 |

* * * * *

David Toska, City of Toledo Chief Prosecutor, and
Henry Schaefer, Assistant Prosecutor, for appellee.

Timothy A. Smith, for appellant.

* * * * *

**SINGER, J.**

{¶ 1} This is a consolidated appeal by appellant, Jackson Industries Corporation, from the June 7, 2017 sentencing entry of the Toledo Municipal Court. For the reasons that follow, we reverse.

**{¶ 2}** Appellant sets forth one assignment of error:

The Findings of Guilty were based on insufficient evidence.

**Facts**

**{¶ 3}** Starting in 2008, appellant began acquiring property in blighted, declining areas of Toledo, Ohio, for urban farming. Shrubs and bushes were planted on some of the lots and organic beds were established on the lots in order to grow vegetables in organic soil, as the existing soil was contaminated. The organic beds start with about 36 inches of wood chips which break down over time into organic soil.

**{¶ 4}** On December 14, 2015, appellee, city of Toledo's, Department of Neighborhoods issued to appellant a "Violation Letter * * * Public Nuisance Order" ("violation letter") for property appellant owned at 1446 Macomber Street, Toledo, Ohio. The violation letter stated the property had been declared a public nuisance and ordered appellant to correct the violations of tall grass, weeds, junk, debris, trash, litter and wood chips, and to maintain the property in a nuisance-free condition pursuant to Toledo Municipal Code 1726.01(a).

**{¶ 5}** The violation letter further stated "[u]nless you cause the abatement of this public nuisance within seventy-two (72) hours after service of this notice you may have criminal charges and/or a civilcomplaint [sic] filed against you in Toledo Municipal Court." In addition, the violation letter provided "[y]ou may, within three (3) business days from the date of this notice/order or no later than 24 hours from the date received, make an in-person request to the Manager of the division of Code Enforcement, for a

2.

hearing on the question of whether a public nuisance as defined in section 1726.01(a) exists and merits summary abatement." No hearing was requested.

{¶ 6} Also on December 14, 2015, appellee issued to appellant two other violation letters for properties appellant owned at 1505 Milburn Avenue, Toledo, Ohio and 2325 Swiler Drive, Toledo, Ohio. All three of the violation letters contained the same language, except for the addresses of the three properties.

{¶ 7} On December 29, 2015, appellee caused three housing complaints to be filed against appellant in Toledo Municipal Court. Each complaint charged appellant with one count of "failing or neglecting to obey or abide with an order to abate a public nuisance-EMERGENCY CONDITION" in violation of Toledo Municipal Code 1726.08(a), with respect to the Macomber, Milburn and Swiler properties (case Nos. CRB-15-19154, CRB-15-19155 and CRB-15-19156). The cases were later consolidated.

{¶ 8} The complaints alleged that appellant "on or about 12/28/15 did violate Toledo Municipal Code No[.] 1726.08(a) constituting a charge of failing or neglecting to obey or abide with an order to abate a public nuisance-EMERGENCY CONDITION." The complaints also alleged "[t]he Inspector witnessed said nuisance which is in violation of orders issued to Defendant, JACKSON INDUSTRIES CORP, on 12/14/2015 to correct the conditions listed below at [the respective property] * * * FAILURE TO ABATE JUNK, DEBRIS, TRASH, AND LITTER. THIS IS TO INCLUDE WOOD CHIPS." Appellant entered pleas of not guilty to the charges.

3.

**Trial**

{¶ 9} On November 29, 2016, a trial to the bench was held. Appellee presented the testimony of three individuals who live near appellant's properties, and the city inspector.

{¶ 10} Jeremy Howard testified to the following. Mr. Howard lives next to the Macomber lot, which he said has remained in the same shape. There are egg shells, coffee grounds, chipped wood, leaves, grass and such piled on the lot, and the high spot is about five-feet tall. There are rats, mice and critters and the lot smells in the summer and is dusty and dirty. There is a trench about 12 to 16 inches high right up to the sidewalk which caused the sidewalk to crack and makes "walking when you're drunk" a problem. Mr. Howard acknowledged there is a pumpkin patch on a portion of the lot.

{¶ 11} Leona Fox testified to the following. Ms. Fox lives across the alley from the Macomber lot or Milburn lot.[1] She has lived in the neighborhood for 57 years. On the lot, nothing is planted or has been planted, and there is a dying tree. The lot is messy, although the weeds have been cut down occasionally. The wood chips are up to her waist - about three to four feet tall. The piles of black dirt were leveled, but there is nothing on the dirt. Dust, odor and weeds are her biggest complaints. She is unable to sit in her yard or work in her yard because of the dust and odor.

---

[1] Ms. Fox was asked to identify, by photograph, across from which lot she lived. Due to confusion in the transcript about which photographs she was shown, her testimony is unclear as to which lot she is discussing.

4.

{¶ 12} Melvin Hughes testified to the following. Mr. Hughes has lived on Auburn since 1991, and is familiar with all three of appellant's properties. "All it started on the lot on Auburn and Milburn" when appellant "first started doing lawn service after the house got torn down they purchased that." Appellant "dumped grass up against the house." Appellant next tried to acquire the lot next to Mr. Hughes, "[b]ut the man promised it to me * * * the man with the ladder promised us the land then gave it back to him. * * * I'm talking about then they gave him the land behind me." Mr. Hughes identified this property as Swiler. "That's when he got that. But he started – that's when he started over there, then he started behind me. * * * Macomber and Auburn * * *[t]hat would be the first one."[2]

{¶ 13} The problems Mr. Hughes witnessed on the properties included trucks dumping mulch, "[f]irst you cut down the trees, got the big large trunk sitting there, then you got the mulch sitting there. Now the mulch sitting on the outside, now they dumping leaves and grass in the center of it." He further testified "[a]nd then the problem with before, even with the vacant house I have a problem with rats in my yard. I have muskrats; I have groundhogs; I have mice; I have a bunch of rabbits." Later, he stated "beforehand * * * I did not have them. * * * I got all these rodents now. That's costly to me. If you look at my house I got a – I have a $400,000 house in a $30,000 neighborhood."

---

[2] It is unclear to which lots Mr. Hughes is referring in his testimony.

5.

{¶ 14} Mr. Hughes testified that at one of the lots, the mulch is higher than his neighbor's house and "[b]ehind my house got to be six or seven feet." He said occasionally a backhoe will "move it around some like he making room to bring in more. * * * It's an on-going thing." He stated it is not a pleasant experience because of "[t]he odor, the rodents, the trucks coming in and dumping all that."

{¶ 15} Deb Dickerson, a general inspector with the city of Toledo since 1995, testified to the following. She is familiar with appellant's properties and received complaints regarding the wood chips that were being placed on the lots. She inspected the properties and issued the December 14, 2015 violation letters to appellant "to remove tall grass, weeds, junk, debris, trash and litter. This order is to include woodchips." She was shown photographs of the properties taken from "December 2015 up until more recently." She was asked, "[g]enerally speaking as it relates to the Macomber address, is the problem getting better or worse?" Ms. Dickerson responded, "[i]t's my opinion it's going to be a challenge come this winter" due to runoff and ice on the sidewalk.

{¶ 16} Ms. Dickerson was shown and identified photographs she took on November 28, 2016, the day before trial. She stated the photographs accurately depict the way the Macomber, Milburn and Swiler properties appeared. She was asked if the problems were getting better, worse or staying the same as to any of the properties. She said, "I've seen that there are more woodchips at one or two of the parcels * * * that's not my inspection area anymore." She opined that appellant's properties were not in compliance.

6.

**{¶ 17}** Ms. Dickerson testified the December 14, 2015 violation letters issued to appellant did not include rats or odors. She stated, with respect to the character of the neighborhood, that "[i]t has declined monetarily. There were abandoned houses and some of those have been taken down. There have been street improvements and there has been life pumped back into it with a new gas station." She also said, "[i]t's what they call a tipping neighborhood. So it's right on the cusp of it could go one way or the other." She noted the neighborhood was mostly residential. She estimated each of appellant's three properties were about an acre.

**{¶ 18}** Appellant presented the testimony of two individuals, Michael O'Rourke and Thomas Jackson. Mr. O'Rourke testified as follows. He works at a garden center and is familiar with urban farming and organic farming. He met Mr. Jackson and became acquainted with appellant's three properties about six or seven years ago. Mr. Jackson wanted to grow food on the properties, but Mr. O'Rourke said, "you've got to do something to them [the properties] first." Mr. O'Rourke noted there had been industry all around the area where the properties are located, and the existing soil was contaminated with toxins and heavy metals. Mr. O'Rourke advised Mr. Jackson to get the blessing of the city, so Mr. Jackson submitted plans to the city's Department of Neighborhoods showing what he wanted to do on the properties.

**{¶ 19}** Mr. O'Rourke testified about the shrubs planted on the properties as well as the troughing, leveling and mulching that had been undertaken on the properties. The mulching revitalized the contaminated soil, and appellant, via Mr. Jackson, is making new

7.

soil. Appellant is doing a passive type of composting. The composted materials are on top of the contaminated soil so the root systems of the plants do not go down into the contaminated soil. Having troughs helps to retain runoff so that nutrients are not lost from the soil. Since Mr. Jackson was concerned about odor, a no-till practice was implemented, which lessens the smell. Mr. O'Rourke did not see any rats on the properties and noted there was no food in the compost for rats to consume, plus compost gets hot and rats like a cool, moist environment.

{¶ 20} Mr. O'Rourke testified the neighborhood has a lot of blight and appellant's properties are located on lots which were vacant. Mr. O'Rourke stated he did not see any $400,000 homes near appellant's properties.

{¶ 21} Mr. Jackson testified to the following. Wood chips were delivered to appellant's properties in mounds, then the wood chips were spread, within a week or two. The properties have been improved since they were first acquired as vegetation can grow in the soil and almost 700 shrubs have been planted. Ten years ago, the neighborhood where appellant's properties are located was a gang-ridden, blighted area, now the police and everyone love the neighborhood, except for six or seven people.

{¶ 22} Mr. Jackson testified the Macomber property has the oldest bed. In 2015, 125 pumpkins were grown on the Macomber lot, and in 2016, 280 pumpkins were grown. The Milburn and Swiler properties are not ready yet for growing as "it's been a slow process because we're waiting on the companies to bring the chips, and with everything that's been going on everything has slowed down." He characterized the beds on the

8.

Milburn and Swiler properties as good, and "these lots are cleaner than the neighbor's." He described the Swiler property as improving, as the wood chips are breaking down, which takes a year to a year and one-half, before becoming organic soil. Mr. Jackson detailed his unsuccessful efforts to work with the city and other agencies, and he also testified about the classes he has attended and the certifications he has received in his attempts to improve the gardening methods used on the properties.

**Order**

{¶ 23} On December 7, 2016, the trial court issued an order. The court found appellant was correct that "the city ordinance does not preclude a landowner from engaging in urban gardening." The court further found "however, if such an activity is engaged in by the owner, it is not allowed to maintain a nuisance condition with wood chips, eggshells and other conditions causing offensive odors in a residential neighborhood." The court found that appellee proved beyond a reasonable doubt that appellant was in violation of the city's nuisance ordinance, and that appellant was guilty of violating Toledo Municipal Code 1726.08(a). The court ordered appellant "to clear the property of debris, wood chips, rodents and other unsightly conditions."

**Sentencing**

{¶ 24} On May 2, 2017, the trial court held a sentencing hearing and sentenced appellant to pay $1,000 and court costs for each of the three violations of Toledo Municipal Code 1726.08(a), failing to abate a public nuisance, for a total of $3,000, plus

9.

costs.  On June 7, 2017, the trial court issued its sentencing entry.  Appellant appealed, asserting the findings of guilt were based on insufficient evidence.

## Standard

{¶ 25} Sufficiency of the evidence is a test as to whether the evidence is adequate or legally sufficient to support a verdict.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541(1997).  Whether there is legally sufficient evidence is a question of law.  *Id.* The relevant inquiry of a reviewing court "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

## Assignment of Error

{¶ 26} Appellant set forth the issue presented for review as:

> Whether an owner of abandoned lots in blighted areas of Toledo may spread wood chips on abandoned properties to create usable topsoil so that healthful food can be grown and harvested.

{¶ 27} Appellant argued the wood on the Macomber property has decomposed so that this year there was a lush garden on the lot.  On the other two lots, the topsoil is in the process of forming.  Appellant noted it was not charged with odors or pests being a nuisance on the three properties.

{¶ 28} Appellee countered that its inspector's testimony satisfied all of the elements of the ordinance and no further testimony was required.  Appellee also argued

10.

that appellant did not exhaust its administrative remedies because it did not appeal the orders to abate the nuisance to the Nuisance Abatement Housing Appeals Board. Therefore, appellant waived the ability to contest the existence of a nuisance.

### Nuisance/Abatement of Nuisance

{¶ 29} Toledo Municipal Code 1726.01 states in relevant part:

(a) "Public nuisance" means * * * any lot, land, yard, premises or location which in its entirety, or in any part thereof, by reason of the condition in which the same is found or permitted to be or remain, shall or may endanger the health, safety, life, limb or property, or cause any hurt, harm, inconvenience, discomfort, damage or injury to any one or more individuals in the City, in any one or more of the following particulars by reason of:

(1) being a menace, threat and/or hazard to the general health of the community.

{¶ 30} Toledo Municipal Code 1726.05 provides in pertinent part:

(a) Any public nuisance not abated within the time specified in the notice-order provided by the Director, or his/her designated representative, or within any additional time provided by the Nuisance Abatement Housing Appeals Board, may be abated by the City pursuant to the order issued by the Director, or his/her designated representative.

11.

**{¶ 31}** Toledo Municipal Code 1726.08(a) states: "No owner, as defined by Section 1726.01(b), shall fail to obey any order issued pursuant to Toledo Municipal Code Part Seventeen Health Code."

**{¶ 32}** The Toledo Municipal Code does not set forth a definition of "abate." The dictionary definitions of "abate" include "to decrease in force or intensity * * * to decrease in amount of value * * * to put an end to." Merriam-Webster, https://www.merriam-webster.com/dictionary/abate (accessed May 29, 2018).

### Analysis

**{¶ 33}** At the outset, we note appellant owns several properties in the Toledo, Ohio area. Only three properties are the subject of this appeal: the Macomber, Milburn and Swiler properties. Therefore, we will limit our discussion to these three properties and any mention of appellant's properties refers only to these three properties.

**{¶ 34}** Next, there appears to be some confusion as to the issue before us. Thus, we will examine the relevant portions of the record and frame the issue we will address.

**{¶ 35}** The record shows the December 14, 2015 violation letters declared, inter alia, that wood chips on appellant's properties constituted a nuisance, and ordered appellant to abate the nuisance. The violation letters set forth the method for appellant to appeal this declaration, but there is no indication in the record that appellant did appeal. Since appellant did not appeal and dispute the nuisance declaration, that declaration stands and cannot now be challenged. *See State ex rel. Nicholson v. City of Toledo*, 6th Dist. Lucas No. L-11-1072, 2012-Ohio-4325.

12.

**{¶ 36}** The complaints filed by appellee, on December 29, 2015, alleged that appellant failed to obey the orders to abate a public nuisance. The issue of whether or not a nuisance truly existed at the properties was not before the trial court, and is not before us. The only issue we must decide is whether sufficient evidence was presented at trial that appellant failed to obey the orders to abate the declared nuisance on the properties.

**{¶ 37}** Last, there seems to be a misunderstanding as to the nature of the declared nuisance that appellant was ordered to abate. The December 14, 2015 violation letters instructed appellant "to remove tall grass, weeds, junk, debris, trash and litter * * * [and] woodchips." The inspector testified the charges against appellant did not include rats or odors on the properties. Therefore, the declared nuisance with which appellant was charged and ordered to abate included only tall grass, weeds, junk, debris, trash, litter and wood chips.

### Our Decision

**{¶ 38}** The testimony and evidence presented at trial demonstrated that appellant was ordered, in December 2015, to abate the nuisance on the properties. Appellant submitted a plan to the city, Mr. Jackson spoke with representatives of the city and appellant commenced efforts to abate the nuisance on the properties.

**{¶ 39}** We find the testimony presented by appellee did not contain sufficient evidence to support a finding that appellant did not abate the nuisance condition on the properties. The neighbors' testimonies were oftentimes confusing, through no fault of their own, and in some instances were contradictory.

13.

{¶ 40} Likewise, the inspector's testimony did not contain sufficient evidence to support a finding that appellant did not abate the nuisance on the properties. The inspector did not testify as to whether the problems were getting better, worse or staying the same as to any of the properties. However, the inspector did volunteer, that at the time of trial, her inspection area no longer included appellant's properties. In addition, although the inspector testified that at the time of trial there were "more woodchips at one or two of the parcels," there is no indication to which property or properties she was referring.

{¶ 41} We find that the photographs admitted into evidence offered the best evidence of the appearance of appellant's properties when they were first declared to be a nuisance, as well as the condition of the properties after work had been undertaken.

{¶ 42} The photographs show the progression of work on the properties from mid-December 2015 until the end of November 2016. The earliest photographs show the properties with piles of wood chips, while later photographs reveal that the piles were leveled. The latest photographs show the properties with some or all of the following: plants, shrubs, bushes, soil, grass, troughs, berms, compost, mulch. The latest photographs also clearly depict the extensive transformation which has occurred on all of the properties, including the substantial reduction in the amount of mulch evident on the properties.

14.

**{¶ 43}** Upon consideration of the evidence, viewed in a light most favorable to appellee, we conclude there is insufficient evidence to support a finding that, beyond a reasonable doubt, appellant failed to obey the orders to abate the nuisance on the properties. Accordingly, appellant's assignment of error is well-taken.

### Conclusion

**{¶ 44}** The June 7, 2017 sentencing entry of the Toledo Municipal Court is reversed. Appellant's convictions are vacated. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                      _____
                                                              JUDGE
Arlene Singer, J.

Christine E. Mayle, P.J.                       _____
CONCUR.                                                       JUDGE

                                                        _____
                                                                      JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.